**STATE of Minnesota, Plaintiff,**

v.

**Todd Laverne LILLESKOV, Defendant,**

**Henry HICKS Jr., Defendant.**

**Nos. C3–02–1698, C8–02–1700.**

Court of Appeals of Minnesota.

April 8, 2003.

Mike Hatch, Attorney General, St. Paul, MN, and

Patrick Ciliberto, Scott County Attorney, Diane M. Hanson, Assistant County Attorney, Jason Eldridge, Shakopee, MN, for plaintiff.

Mark Nyvold, Attorney at Law, St. Paul, MN, for defendants.

Considered and decided by LANSING, Presiding Judge, KLAPHAKE, Judge, and STONEBURNER, Judge.

## OPINION

LANSING, Judge.

This certified question was issued in two prosecutions for violations of the predatory-offender-registration statute, Minn.Stat. § 243.166 (2000). The two cases were consolidated by the district court for the purposes of the certified question, which asks whether the statute applies to defendants Henry Hicks and Todd Lilleskov, who have juvenile adjudications for sex-related offenses that were entered before the statute was amended to cover juvenile sex offenders. We answer the certified question in the affirmative.

## FACTS

Defendant Todd Lilleskov, who was born August 18, 1978, was adjudicated delinquent on May 2, 1994, for having committed third-degree criminal sexual conduct. Lilleskov was notified by his probation officer of the requirement to register as a sex offender and, on October 4, 1994, he completed the initial registration. As part of the registration, Lilleskov reported his current address. In the years 1997, 1998, 1999, and 2000, the BCA registration unit mailed verification letters to Lilleskov at his last-reported address. Lilleskov allegedly did not respond to any of these letters.

In January 2001, police checking at Lilleskov's last-reported Shakopee address learned that he had not lived there for years, possibly as long as six years. Lilleskov was then charged with two counts of violating the predatory-offender-registration law: (1) failing to provide written notice of a change of address; and (2) failing to return the annual verification letters.

Defendant Henry Hicks, who was born December 5, 1979, was adjudicated delinquent on January 20, 1994, for fourth-degree criminal sexual conduct. Hicks was also notified by his probation officer of the registration requirement, and he completed the initial registration on December 29, 1994. As part of the registration, he furnished the BCA with his current address. In January 2001, Hicks notified the BCA of a change of address. But in December of that year, Hicks allegedly failed to respond to an address-verification letter. When police investigated in February 2002, they discovered that Hicks allegedly had not lived at the address "for some time" and was believed to have moved out of state. Hicks was charged with one count of violating the predatory-offender-registration statute by failing to notify the BCA of his new address.

Both Lilleskov and Hicks filed motions to dismiss, arguing that the predatory-offender-registration statute did not apply to them. The district court denied Lilleskov's motion. Another judge of the district court granted Hicks's motion to dismiss, but certified the question to this court, consolidating the case with that of Lilleskov, whose case was apparently before that judge for calendaring.

## ISSUE

Does the predatory-offender-registration statute, as amended in 1994, apply to juvenile offenders adjudicated delinquent for a qualifying offense before the effective date of the amendment?

## ANALYSIS

The district court may certify a question to this court in a criminal case, if the defendant consents to the certification. Minn. R.Crim. P. 28.03. The district court, however, must frame the question and answer the question in its certification order. *Id.; State v. Saunders*, 542 N.W.2d 67, 69 (Minn.App.1996).

The district court framed the issue as "whether the Defendant is a 'person required to register' pursuant to [the predatory-offender-registration statute]." The court indicated its conclusion that Hicks (and apparently Lilleskov as well) was not required to register. Although it would have been preferable for the district court to set forth its reasoning, it appears that the district court adopted the defense argument summarized in the court's memorandum. *See generally State v. Brink*, 500 N.W.2d 799, 802 (Minn.App.1993) (stating that the district court must "decide and specify the precise legal question certified").

■ The state, which as the nonprevailing party in the district court acts as the appellant in this case, has presented a number of constitutional arguments in its brief. These issues are outside the scope of the certified question, which does not address any constitutional challenges to Minn.Stat. § 243.166, subd. 1. *See Saunders*, 542 N.W.2d at 70 (declining to address issues not within precise legal question certified for review). We note, however, that this court has held that the predatory-offender-registration statute, as applied to offenders who committed their qualifying offenses before its effective date, does not violate the federal or state constitutional prohibition of ex-post-facto laws. *State v. Manning*, 532 N.W.2d 244, 248–49 (Minn.App.1995), *review denied* (Minn. July 20, 1995); *see also In re Welfare of C.D.N.*, 559 N.W.2d 431, 433 (Minn.App.1997) (extending *Manning* holding on nonpunitive nature of registration statute to registration of juvenile offenders).

The district court concluded that the statute, as amended in 1994, does not apply to Hicks and Lilleskov, resting its conclusion on the statutory presumption against retroactive legislation. *See* Minn. Stat. § 645.21 (2000). That presumption requires that, for a statute to apply retroactively, the intent that it do so must be "clearly and manifestly" indicated. *Id.*

Minnesota's sex-offender-registration statute, as it was then called, was enacted in 1991 after the Jacob Wetterling kidnapping but before the widespread enactment of so-called "Megan's Laws" across the country in 1994 and succeeding years. *See* 1991 Minn. Laws ch. 285, § 3; Walsh & Cohen, *Sex Offender Registration and Community Notification* 1–1, –2 (2001). The statute as first enacted required the sex offender to register upon release from prison. 1991 Minn. Laws ch. 285, § 3. It was soon amended, however, to require the offender to register as soon as he was assigned a corrections agent. 1993 Minn. Laws ch. 326, art. 10, § 3.

As amended in 1993, the statute applied to persons "charged with a felony violation of or attempt to violate" various enumerated criminal statutes, "and convicted of that offense" or another offense arising out of the same circumstances. *Id.* § 1. The 1994 amendment at issue in this appeal extended the statute to certain juvenile offenders, to make the statute read:

A person shall register under this section if: (1) the person was charged with *or petitioned for* a felony violation of or attempt to violate any of the following [enumerated statutes], and convicted of *or adjudicated delinquent for* that offense or of another offense arising out of the same set of circumstances; * * *.

1994 Minn. Laws ch. 636, art. 4, § 5 (emphasis added); *see* Minn.Stat. § 243.166, subd. 1(1) (1994).

■ In seeking the legislative intent behind the 1994 amendment, we must first consider that the 1994 law amended a statute that was already retroactive by its operation, and that the 1994 amendment

merely added a new class of offenders subject to the registration requirement. The purpose of the predatory-offender-registration statute "is to create an offender registry to assist law enforcement with investigations." *Boutin v. LaFleur,* 591 N.W.2d 711, 717 (Minn.1999). The statute, by making the offender register upon his release into the community, either on probation or following release from prison, necessarily operates without regard to the date of his conviction. *See Manning,* 532 N.W.2d at 247 (recognizing that registration statute applicable based on date of release from prison was being applied retroactively to offenses previously committed); *see generally Ubel v. State,* 547 N.W.2d 366, 372 (Minn.1996) (holding that 1993 amendment taxing earlier event necessarily required retroactive application). The intended goal of the statute, to monitor sex offenders released into the community, would have been substantially impeded if it applied only to offenders who committed their offense after the statute's effective date. Many of those offenders would have had lengthy prison terms to serve before becoming subject to the statute's requirements.

Thus, almost all of the "Megan's Laws" adopted around the country have been applied retroactively, either through explicit language or by judicial interpretation. *See Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367, 428 (1995) (Stein, J., dissenting) (noting that only five states, not including Minnesota, do not apply their statute retroactively); Comment, 81 Minn. L.Rev. 501, 515 (1996) (noting that most states apply their registration law retroactively to offenses committed before the effective date of the statute). The predatory-offender-registration statute, which imposes a duty to register based on a status that is triggered by an earlier act, can hardly be understood except as applied retroactively. While we recognize the presumption against retroactive legislation, a provision that only *future* sex offenders register would have little effect except in the distant future. Of those states whose registration statutes are *not* applied retroactively, it appears that all have explicit language making the registration requirement prospective only, and none has been so construed by the courts in the absence of such language. *See* Ark.Code Ann. § 12–12–905 (2002); Colo.Rev.Stat. § 16–22–103 (2002); Fla. Stat. § 775.21 (2002); 730 Ill. Comp. Stat. 150/2 (2002); Kan. Stat. Ann. § 22–4902 (2002).

■ The 1994 amendment at issue here merely added to an already retroactive statute a new class of offenders (juvenile offenders) subject to its requirements. Although amendments are generally presumed to be prospective in effect, an amendment that merely clarifies the legislature's intent may be applied retroactively. *Lassen v. First Bank Eden Prairie,* 514 N.W.2d 831, 835 (Minn.App.1994), *review denied* (Minn. June 29, 1994). The 1994 amendment clarified the legislature's intent that the age of the predatory offender was irrelevant to the duty to register. *Cf. State v. Ronquist,* 600 N.W.2d 444, 449 (Minn.1999) (holding that amendment requiring grand jury indictment did not merely clarify statute mandating life imprisonment for certain repeat sex offenders). It would be unreasonable to limit this amendment to a prospective effect, inferring a legislative intent that whereas all adult predatory offenders were required to register, only *future* juvenile offenders would be required to do so. *Cf. Thompson v. Comm'r of Pub. Safety,* 567 N.W.2d 280, 282 (Minn.App.1997) (holding that legislature is presumed to have intended all parts of statute to be effective), *review denied* (Minn. Sept. 25, 1997).

The 1994 law adding juvenile predatory offenders also added an alternative method of notifying offenders of the duty to register. It provided that if the offender were not notified of the duty at sentencing, he would be notified by his assigned corrections agent. 1994 Minn. Laws ch. 636, art. 4, § 6. One apparent purpose of this alternative method of notification was to give notice to offenders who had not been previously required to register. That notification procedure implies an acknowledgement that the amendment would have the retroactive effect of applying to offenders who had already been adjudicated.

The legislature in the 1994 act made one part of its changes to the predatory-offender-registration statute prospective only. The criminal-penalty provision of the law, which reclassified the failure to register from a misdemeanor to a gross misdemeanor, was made applicable "to crimes committed on or after" the effective date. *Id.* at § 42. This provision recognized that any enhancement of the criminal penalty would violate the ex-post-facto prohibition unless it was made prospective only. By *not* specifying that other changes to the statute would be prospective-only, the legislature apparently recognized that making them retroactive would not violate ex-post-facto prohibitions. The supreme court has confirmed that judgment, holding that the statute is regulatory rather than punitive. *Boutin,* 591 N.W.2d at 717. The absence of any ex-post-facto prohibition against extending the registration requirement retroactively to juvenile offenders, of course, does not prove that retroactive application was the legislature's intent. But it corroborates the other evidence of an intended retroactive application.

■ The 1994 amendment to Minn.Stat. § 243.166, subd. 1, did not contain a clear statement that it was to be applied retroactively. But the statute that it amended did provide that it applied retroactively, and its retroactive effect is clear. *See* 1991 Minn. Laws ch. 285, § 13(a) (providing specifically that registration requirement applied to offenders released from prison on or after August 1, 1991). Because the 1994 amendment merely extended the scope of the statute, thereby clarifying the legislature's intent, we hold the 1994 amendment is also retroactive. Thus, in answer to the certified question, Minn. Stat. § 243.166 does apply to respondents, although their juvenile offenses were committed before the effective date of the statute.

## DECISION

The predatory-offender-registration statute, Minn.Stat. § 243.166, applies to respondents.

**Certified question answered in the affirmative.**